# UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| Avadian Credit Union,<br><br>   Plaintiff,<br><br>v.<br><br>Berkley Regional Insurance Company,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. _____<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT
### (JURY TRIAL DEMANDED)

Plaintiff Avadian Credit Union ("Avadian"), by and through its undersigned counsel, files this Complaint against Defendant Berkley Regional Insurance Company ("Defendant"), stating:

## PARTIES

1. Avadian is a state-chartered credit union with its principal place of business in Birmingham, Alabama. Avadian started in Alabama in 1934 and now serves more than 90,000 members at its branches and locations that are located exclusively in Alabama.

2. Defendant is a foreign corporation organized under the laws of the State of Iowa with its principal place of business in Iowa and conducts business in

Alabama. Defendant may be served with process through its registered agent, CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because there is complete diversity among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has personal jurisdiction over Defendant in this state and district under the Due Process Clause of the Constitution and under Alabama's long-arm statute, which permits the exercise of personal jurisdiction to the fullest extent allowed by federal law.

5. Venue is proper in this judicial district under 28 U.S.C.A. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Avadian's claims occurred here.

## FACTUAL ALLEGATIONS

3. In March 2023, Charnessa Campbell ("Campbell"), on behalf of Airight Services LLC ("Airight"), opened a business account with Avadian for Airight (the "Account").

4. At this time, Campbell was the only authorized signer on the Account and had claimed 100 percent ownership of Airight.

5. In July 2023, Kevin Glenn ("Glenn") was added as an authorized signer on the Account.

6. On August 8, 2023, the U.S. Department of the Treasury ("Treasury Department") issued check number 31851007 to Petersen Automotive Museum in the amount of $607,748.66 (the "Check").

7. Upon information and belief, Campbell and Glenn altered and/or forged the payee on the Check from "Petersen Automotive Museum" to "Airight Services LLC" subsequent to the issuance from the Treasury Department. Alternatively, upon information and belief, Campbell and Glenn intercepted the Check subsequent to the issuance from the Treasury Department and used the Check to create a counterfeit check. The Check as either altered and/or forged by Campbell or Glenn or the Check as used by Campbell and Glenn to create a counterfeit check is hereinafter referred to as the "Airight Services Check."

8. On November 20, 2023, the Airight Services Check was deposited into the Account by Glenn.

9. Campbell and Glenn, by and through their entity, Airight, intended to deceive and commit a fraud against Avadian.

10. Campbell and Glenn, by and through their entity Airight, intended the Airight Services Check to be taken as the unaltered Check issued by the Treasury Department.

3

11. Avadian was unaware of the fraudulent scheme.

12. As part of its normal procedure, Avadian placed a five-business-day hold on the Airight Services Check.

13. On November 27, 2023, the hold lifted for the Airight Services Check.

14. By January 24, 2024, the proceeds of the Airight Services Check were nearly exhausted with less than $10 remaining in the Account.

15. On the same day, Campbell and Glenn closed the Account and withdrew the remaining funds.

16. Upon information and belief, Petersen Automotive Museum filed a claim with the Treasury Department pertaining to the Check.

17. On August 12, 2024, Avadian received a reclamation notice from the Treasury Department for the proceeds of the Check in the amount of $607,748.66 (the "Reclamation Notice").

18. The Treasury Department exercised its reclamation rights within the statutory period provided by controlling law.

19. On September 11, 2024, the Treasury Department retrieved the proceeds of the Check in the amount of $607,748.66 from Avadian's Federal Reserve Master account (the "Loss").

20. At the time of the prior allegations, Avadian was a named insured on a Financial Institution Bond Number FBCU-45004901-21 issued by Defendant on

August 18, 2023 (the "Bond"). A true and correct copy of the Bond is attached hereto as **Exhibit A**.

21. The Bond was effective from August 20, 2023, to August 20, 2024 (the "Bond Period").

22. The Bond includes various Insuring Agreements.

23. These Insuring Agreements include coverage for fraudulent deposits ("Fraudulent Deposit Insuring Agreement"), counterfeit checks ("Counterfeit Check Insuring Agreement"), and forgeries or alterations ("Forgery or Alteration Insuring Agreement").

24. Pursuant to the Fraudulent Deposit Insuring Agreement,[1] Defendant agreed to indemnify Avadian during the Bond Period from losses resulting directly from fraudulent deposits.

25. The Fraudulent Deposit Insuring Agreement provides coverage during the Bond Period with a Single Loss Limit of Liability in the amount of $1,000,000.

26. The Fraudulent Deposit Insuring Agreement requires payment of a Single Loss Deductible in the amount of $50,000.

27. The Fraudulent Deposit Insuring Agreement applies to any "[l]oss resulting directly from an Accountholder, an Accountholder's authorized

---

[1] The Fraudulent Deposit Insuring Agreement is set forth in the Bond's "Fraudulent Deposit Rider."

representative, or a person purporting to be an Accountholder depositing into a savings, checking or other deposit account maintained with [Avadian] an Item of Deposit that is ultimately not paid, provided: (a) the Accountholder, the Accountholder's authorized representative, or the person purporting to be an Accountholder intended to deceive the Insured and commit a fraud against [Avadian] by depositing the Item of Deposit, (b) the Accountholder, the Accountholder's authorized representative, or the person purporting to be an Accountholder had full knowledge that the Item of Deposit ultimately would not be paid, and (c) [Avadian] made payment or extended credit against the Item of Deposit."

28. The Bond's definition of an "Item of Deposit" includes a check, draft, share draft, or money order drawn on a financial institution other than Avadian, as well as an electronic image of a check draft, share draft, or money order drawn on a financial institution.

29. Pursuant to the Counterfeit Check Insuring Agreement, Defendant agreed to indemnify Avadian during the Bond Period from losses related to counterfeit share draft, checks, or securities.

30. The Counterfeit Check Insuring Agreement provides coverage during the Bond Period with a Single Loss Limit of Liability in the amount of $5,000,000.

31. The Counterfeit Check Insuring Agreement requires payment of a Single Loss Deductible in the amount of $100,000.

32. The Counterfeit Check Insuring Agreement applies to any "[l]oss resulting directly from a Counterfeit check, draft or share draft, but not a money order, that was finally paid against [Avadian's] corporate share or checking account or a share draft or checking account the Accountholder has with [Avadian]."

33. "Counterfeit" is defined in the Bond as "an imitation which is intended to deceive and be taken as the original."

34. Pursuant to the Forgery or Alteration Insuring Agreement, Defendant agreed to indemnify Avadian during the Bond Period from losses related to forgeries or alterations.

35. The Forgery or Alteration Insuring Agreement provides coverage during the Bond Period with a Single Loss Limit of Liability in the amount of $1,500,000.

36. The Forgery or Alteration Insuring Agreement requires payment of a Single Loss Deductible in the amount of $50,000.

37. The Forgery or Alteration Insuring Agreement applies to any "[l]oss resulting from the Forgery or alteration of an Instrument."

38. The Bond defines "Instrument" to include a check.

7

39. On August 23, 2024, Avadian reported the Loss from the Reclamation Notice to Defendant.

40. On September 17, 2024, Defendant requested a proof of loss form and additional information relating to the Reclamation Notice from Avadian.

41. On September 20, 2024, Avadian submitted a complete, sworn proof of loss form to Defendant, seeking recovery of $607,748.66 under the Bond (the "Claim").

42. On October 21, 2024, Defendant requested additional information pertaining to the Claim from Avadian, and on October 29, 2024, Avadian provided additional requested information to Defendant on the Claim.

43. On January 6, 2025, Defendant denied the Claim, relying in part on an erroneous argument that coverage was excluded under the Bond for the Check that had been reclaimed as such Check ultimately had been paid. A true and correct copy of Defendant's denial of the Claim is attached hereto as **Exhibit B**.

44. On January 23, 2025, counsel for Avadian responded to Defendant's denial of the Claim, identified Defendant's erroneous argument, and demanded that Defendant provide coverage under the Bond for the Loss as the Check was "ultimately not paid" when the Treasury Department required Avadian to refund the full amount of the Check via the reclamation process. A true and correct copy of counsel for Avadian's response to the denial of the Claim is attached hereto as

**Exhibit C**. Thus, pursuant to the Bond's plain language, Defendant was obligated to indemnify Avadian for the Loss.

45. On February 6, 2025, counsel for Defendant reaffirmed its denial of coverage. Defendant did not address Avadian's position that the Check was ultimately not paid but instead argued that the Check had been *finally paid* by the Treasury Department despite its reclamation of the Check. A true and correct copy of counsel for Defendant's February 6, 2025 letter is attached hereto as **Exhibit D**.

46. Counsel for Defendant even threatened to seek "all relief available to it" if Avadian pursued its claims against Defendant for denial of coverage under the Bond. *See* Ex. D.

47. To date, Defendant has refused to provide coverage for Avadian's loss.

## COUNT ONE
## (BREACH OF CONTRACT)

48. Avadian incorporates by reference each and every factual allegation contained in the preceding paragraphs and further alleges that:

49. At all relevant times, Avadian has paid all premiums due under the Bond to Defendant in a timely manner and otherwise complied with all conditions and requirements placed upon Avadian under the Bond.

50. In exchange for that premium, Defendant agreed to provide coverage pursuant to the various Insuring Agreements, including the Fraudulent Deposit Insuring Agreement.

51. As described in the factual allegations above, the Claim satisfied the terms of the Fraudulent Deposit Insuring Agreement.

52. Avadian has made a demand of Defendant to provide the coverage for the Claim.

53. Defendant has breached the Bond by denying coverage for the covered Claim and failing to indemnify Avadian as required by the Fraudulent Deposit Insuring Agreement.

54. As a direct and proximate result of Defendant's failure to provide the agreed upon coverage pursuant to the Fraudulent Deposit Insuring Agreement, Avadian has sustained damages and injuries, including but not limited to damages for interest, fees, costs, and attorneys' fees.

WHEREFORE, Avadian demands judgment in its favor and against Defendant in the amount of all compensatory damages, including damages for interest, fees, costs, and attorneys' fees, and all such further damages as this Court deems reasonable and just.

## COUNT TWO
### (BREACH OF CONTRACT)

55. Avadian incorporates by reference each and every factual allegation contained in the preceding paragraphs and further alleges that:

56.     At all relevant times, Avadian has paid all premiums due under the Bond to Defendant in a timely manner and otherwise complied with all conditions and requirements placed upon Avadian under the Bond.

57.     In exchange for that premium, Defendant agreed to provide coverage pursuant to the various Insuring Agreements, including the Counterfeit Check Insuring Agreement.

58.     As described in the factual allegations above, the Claim satisfied the terms of the Counterfeit Check Insuring Agreement.

59.     Avadian has made a demand of Defendant to provide the coverage for the Claim.

60.     Defendant has breached the Bond by denying coverage for the covered Claim and failing to indemnify Avadian as required by the Counterfeit Check Insuring Agreement.

61.     As a direct and proximate result of Defendant's failure to provide the agreed upon coverage pursuant to the Counterfeit Check Insuring Agreement, Avadian has sustained damages and injuries, including but not limited to damages for interest, fees, costs, and attorneys' fees.

WHEREFORE, Avadian demands judgment in its favor and against Defendant in the amount of all compensatory damages, including damages for

interest, fees, costs, and attorneys' fees, and all such further damages as this Court deems reasonable and just.

## COUNT THREE
## (BREACH OF CONTRACT)

62. Avadian incorporates by reference each and every factual allegation contained in the preceding paragraphs and further alleges that:

63. At all relevant times, Avadian has paid all premiums due under the Bond to Defendant in a timely manner and otherwise complied with all conditions and requirements placed upon Avadian under the Bond.

64. In exchange for that premium, Defendant agreed to provide coverage pursuant to the various Insuring Agreements, including the Forgery or Alteration Insuring Agreement.

65. Because the payee on the Airight Services Check had been forged and/or altered, causing the loss of the proceeds of the Check suffered by Avadian, the terms of the Forgery or Alteration Insuring Agreement are satisfied by the Claim.

66. Avadian has made a demand of Defendant to provide the coverage for the Claim.

67. Defendant has breached the Bond by denying coverage for the covered Claim and failing to indemnify Avadian as required by the Forgery or Alteration Insuring Agreement.

68. As a direct and proximate result of Defendant's failure to provide the agreed upon coverage pursuant to the Forgery or Alteration Insuring Agreement, Avadian has sustained damages and injuries, including but not limited to damages for interest, fees, costs, and attorneys' fees.

WHEREFORE, Avadian demands judgment in its favor and against Defendant in the amount of all compensatory damages, including damages for interest, fees, costs, and attorneys' fees, and all such further damages as this Court deems reasonable and just.

## COUNT FOUR
### (BAD FAITH DENIAL)

69. Avadian incorporates by reference each and every factual allegation contained in the preceding paragraphs and further alleges that:

70. Avadian and Defendant entered into contracts insuring fraudulent deposits, counterfeit checks, and forgeries or alterations.

71. Defendant agreed to provide insurance as to fraudulent deposits, counterfeit checks, and forgeries or alterations pursuant to various Insuring Agreements.

72. Defendant provided the Bond for the benefit of Avadian.

73. As described in the factual allegations above, the terms of the Fraudulent Deposit Insuring Agreement are satisfied by the Claim.

74. As described in the factual allegations above, the terms of the Counterfeit Check Insuring Agreement are satisfied by the Claim.

75. Because the payee on the Airight Services Check had been forged and/or altered, causing the loss of the proceeds of the Check suffered by Avadian, the terms of the Forgery or Alteration Insuring Agreement are satisfied by the Claim.

76. Avadian submitted a Proof of Loss, seeking coverage under the Bond.

77. Defendant has intentionally refused to pay the Claim.

78. Defendant has no reasonably legitimate or arguable reason for its refusal to pay the Claim to Avadian and there is no bona fide dispute regarding any applicable or relevant fact.

79. Defendant's own actions and purported reasons are contrary to the language of its own Bond.

80. Defendant has failed to properly investigate the Claim and demand for coverage of the Claim submitted by Avadian to Defendant.

81. Defendant has intentionally delayed agreeing to provide coverage of the Claim to Avadian when Defendant had no reasonably legitimate, debatable, or arguable reason for such delay.

82. Defendant has intentionally failed to determine whether there is a legitimate or arguable reason not to provide Avadian the requested coverage of the Claim.

83. Defendant has denied the Claim with reckless indifference to the facts or proof.

84. Defendant has attempted to distort terms and conditions included in the Bond as a basis to deny Avadian's demands for coverage of the Claim.

85. Defendant has acted with gross and reckless disregard for Avadian's rights as an insured.

86. In addition to denying the Claim, Defendant also has acted in bad faith by threatening to seek "all relief available to [Defendant]" if Avadian pursues its claims against Defendant for denial of coverage under the Bond, including seeking to recover attorneys' fees from Avadian.

87. Defendant's flagrant breach of its obligations to act in good faith toward its insured in responding to the Claim and its refusal to pay the Claim justifies extra-contractual damages, including punitive damages and attorneys' fees.

WHEREFORE, Avadian demands judgment in its favor and against Defendant in the amount of all compensatory and punitive damages, including damages for interest, fees, costs, and attorneys' fees, and all such further damages as this Court deems reasonable and just.

## **PRAYER FOR RELIEF**

WHEREFORE, Avadian demands a jury trial on issues of fact and seeks the following relief from this Court:

1. Judgment awarding Avadian all damages suffered as a result of Defendant's breach of its obligations, as outlined above, including but not limited to attorneys' fees, costs, and pre- and post-judgment interest in the maximum amount allowed by law;

2. Punitive damages against Defendant; and

3. Any other relief that this Court deems reasonable and just.

Respectfully submitted this 6th day of March, 2025.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Hallman B. Eady*
Hallman B. Eady
One Federal Place
1819 5th Avenue North
Birmingham, AL 35203
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
heady@bradley.com

*Counsel for Plaintiff*